United States District Court
Southern District of Texas
**ENTERED**
March 08, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LINDA A. PORTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1553 |
| | § | |
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Linda Porter, who is African-American, sued her employer, Exxon Mobile Corporation, alleging that it discriminated against her by denying her promotions in 2010 and 2011 and giving her raises in 2010, 2011, and 2012 that were lower than those given to similarly situated employees outside her protected class. She also alleged that Exxon retaliated against her for complaining about discrimination. Exxon moved for summary judgment on these claims, (Docket Entry No. 31), Porter responded, (Docket Entry No. 66), Exxon replied to the response, (Docket Entry No. 69), Porter surreplied to the reply, (Docket Entries Nos. 72, 80), and Exxon responded to the surreply, (Docket Entry No. 79). Exxon separately moved to strike parts of Porter's summary judgment evidence. (Docket Entries Nos. 68, 78). Porter did not file a response to the motion to strike but did file amended declarations. (Docket Entries Nos. 75, 76). The court heard oral argument on the motions on February 2, 2016. (Docket Entry No. 77).

Based on the pleadings; the motions, responses and replies; the arguments of counsel; the record; and the relevant law; the court grants in part and denies in part the objections set out in the

motion to strike, and grants the motion for summary judgment.  Final judgment dismissing the case is separately entered.

The reasons are set out in detail below.

## I.     Background

The summary judgment record is extensive.  Porter has worked for Exxon since 2000.  At various times during her employment, she complained that her supervisors discriminated against her on the basis of her race.  In 2010 and 2011, Porter did not receive promotions she asserts she should have.  She was promoted effective 2012.  Porter also received raises in 2010, 2011, and 2012 that she asserts were less than those received by comparable white employees.  Porter alleged that these actions were motivated by racial discrimination and by retaliation for her prior complaints.

### A.     Exxon's Compensation and Promotion System

Exxon's system for promoting and compensating employees who, like Porter, are in the Office, Clerical, and Administrative employee category, is based on "rankings" and "classification levels" ("CL").  The first is performance based; the second is job based.

Each employee is ranked "A," "B," "C," or "D" ("A" is highest) based on performance relative to that of other employees.  (Docket Entry No. 32, Sink Decl. at ¶ 6).  Different rank groups exist for certain classes and groups of employees and business lines.  (*Id.*).  An employee's performance ranking affects compensation and eligibility for promotion.  (*Id.* at ¶¶ 6, 7, 8; Docket Entry No. 67).  Employee rankings are determined through a collaborative process.  Each supervisor evaluates the employees working in his or her group.   Employees contribute to their own evaluations.  (Docket Entry No. 32, Sink Decl. at ¶ 8).  The supervisor suggests a rank for each employee.  (Docket Entry No. 31, Ledesma Depo. at 54:4-55:9).  Other supervisors in the same work

2

group generally approve the rankings the direct supervisor assigns if they are not familiar with the particular employee.  (*Id.*)

Employees are also assigned numerical CLs.  (Docket Entry No. 32, Sink Decl. at ¶ 7).  Each position has a numbered CL band.  Moving to a higher CL within the band is termed a promotion. (*Id.*).  A CL promotion does not necessarily result in a change in job duties or additional compensation, but an employee's CL is a factor in setting base compensation and raises. (*Id.* at ¶ 8).


Exxon makes promotion decisions at set periods during a year, to become effective on a later specified date.  It appears from the record that promotion decisions for a particular year are made in September or October and become effective the following year.  (Docket Entry No. 32, Sink Decl. at ¶ 9).  A consulting company, Global Compensation, reviews employees within each CL to determine who is eligible for promotion.  (*Id.* at ¶ 8).  Supervisors may recommend employees for CL promotions.  If Global Compensation finds that an employee is eligible for promotion and recommends it, the supervisors are asked for approval.  (Docket Entry No. 31, Ledesma Depo. at 54:4-55:5; Smalstig Decl. at ¶¶ 14, 15).

An employee's eligibility for a CL promotion is determined by objective criteria set out in Exxon's written Advancement Guide.  (Docket Entry No. 31, Sink Decl. at ¶ 7).  The Advancement Guide states the number of years an employee of a particular rank and position must have been working at his or her current CL to qualify for a CL promotion.  (Docket Entry No. 32, Sink Decl. at ¶ 7; Docket Entry No. 67).  Rankings can affect eligibility for CL promotion.  Employees with an A ranking, for example, must spend less time in their current CL to become eligible for a CL promotion than employees with a B ranking.  (Docket Entry No. 67).

3

Raises appear to be decided at the same time each year as promotions. Global Compensation recommends which employees should receive raises and how much. These recommendations are based on factors that include the market and each employee's CL, performance ranking, and experience. (Docket Entry No. 32, Sink Decl. at ¶ 8). Global Compensation passes these recommendations to Exxon. (*Id.*) Supervisors review the recommendations. A supervisor may request additional compensation as an exception. (*Id.*)

### B.    Porter's Employment at Exxon

Porter began working for Exxon in 2000 as a secretary. (Docket Entry No. 75, Porter Decl. at ¶ 2). In 2005, she began having problems with her fellow employees and her supervisor, Cled Cole. (*Id.* at ¶ 5). Porter believed that Cole treated her differently than he treated white employees. (*Id.*). She complained to the Human Resources Department about his treatment. (*Id.*; Docket Entry No. 66, Cowthran Depo. at 44:13-19).

In 2006, Porter had a heated argument with a coworker. (Docket Entry No. 75, Porter Decl. at ¶ 6). The incident was referred to Human Resources Department for investigation.[1] In 2007, Porter's ranking was lowered from a B to a C. (*Id.* at ¶ 7).

In December 2005, Porter was promoted from CL 14 to CL 15. (*Id.* at ¶ 5). It is not clear if she received a raise at this time. (Docket Entry No. 31, Porter Depo. at 50:25-52:17). On December 4, 2007, Porter filed a Charge of Discrimination with the EEOC. (*Id.* at 23:2-23).

---

[1] It is not clear from the record if Porter reported this incident to the Human Resources Department or if it was referred to the Human Resources Department by Exxon supervisors. Porter states in paragraph 6 of her declaration that after the conflict she and the coworker "were asked to go to Human Resources." (Docket Entry No. 75, Porter Decl. at ¶ 6). But in the next paragraph, she states that "after my meetings and complaints to Human Resources, Cole dropped my rank . . . ." (*Id.* ¶ 7).

In 2008, Porter transferred to a new work group and Julian Ledesma became her supervisor. (Docket Entry No. 75, Porter Decl. at ¶ 10).  In 2010, Porter requested a CL promotion, which was denied.  (*Id.* at ¶ 14).  She was given a .5% raise in 2010.  (*Id. at ¶* 10; Docket Entry No. 31, Sink Decl. at ¶ 13).  She alleges that similarly situated white employees did receive CL promotions in 2010 and higher raises.  Although she was not given a CL promotion in 2010, she did receive a ranking increase from C to B.  (Docket Entry No. 75, Porter Decl. at ¶¶ 12, 14).  Ledesma tried in November 2010 to have Porter's position reclassified to a higher CL band, but the Human Resources Department found that she was properly classified and rejected the request.  (Docket Entry No. 31, Ledesma Depo. at 139:8-140:3).

Problems developed between Porter and Ledesma.  Some time during 2011, Porter applied for a CL promotion.  (Docket Entry No. 75, Porter Decl. at ¶ 14).  In April 2011, Porter complained that Ledesma had discriminated against her based on her race; the record does not make clear the specific acts she identified as discriminatory.  (*Id.* at ¶ 15; Docket Entry No. 66, Wilkerson Depo. at 30:14-23).

In June 2011, Ledesma gave Porter a performance review that she believed was unjustifiably critical.  (Docket Entry No. 75, Porter Decl. at ¶ 15).  Ledesma's review stated that Porter frequently wrote numerous, long, and confrontational emails to her coworkers, when face-to-face conversations would have been more effective and less divisive.  (Docket Entry No. 31, Ledesma Depo. at 92:25-94:25).  Porter complained to Human Resources that the review was based on race discrimination.  (Docket Entry No. 75, Porter Decl. at ¶ 15).  In 2011, Porter received a 4.4% raise, (Docket Entry No. 31, Sink Decl. at 13), which she alleged was less than similarly situated white employees received.  In October 2011, Ledesma and two other supervisors, Kevin Smaltig and Ray

Steinmetz, recommended that Porter be promoted from CL 15 to CL 16.  (*Id.* at ¶¶ 14-15).  That CL promotion was approved in October 2011 and took effect in September 2012.  (*Id.*).  Her supervisors also approved a 10.4% raise, to be effective in 2012.  (*Id.*).

### C.    Porter's Claims

On February 13, 2014, Porter filed an EEOC complaint alleging discrimination based on race, sex, and retaliation.  (Docket Entry No. 1, Ex. 1 at 2).  The EEOC dismissed the charge on the ground that Porter had not timely filed it, and issued a right-to-sue letter.  (*Id.* at 15).  Porter filed this lawsuit on June 4, 2014.  She alleged racial discrimination under 42 U.S.C. § 1981 for the denial of her CL promotions in 2010 and 2011 and the raises she received in 2010, 2011, and 2012.  She also alleged retaliation under § 1981.  The parties conducted extensive discovery, and Exxon filed this summary judgment motion.

## II.    The Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." Fed. R. Civ. Proc. 56(c)(1)(A). "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing

*Celotex*, 477 U.S. at 323).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[ ] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.*  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id.* (internal quotation marks omitted).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

**III.    Exxon's Motion to Strike Parts of the Summary Judgment Evidence**

Analyzing the summary judgment motion requires deciding what summary judgment evidence is competent.  Exxon moved to strike parts of the summary judgment evidence Porter submitted.  Exxon also moved to strike the declarations of Porter and Fondel in their entirety, on the basis that they were not made under penalty of perjury.

Alternatively, Exxon argued that parts of Porter's declaration should be stricken because they contradict her deposition testimony or are "speculative, unsupported, subjective, conclusory assertions;"  that all of Fondel's declaration should be stricken because her statements describing her own experience working for Exxon are irrelevant to Porter's claims; that parts of Fondel's declaration should be striken as speculative, asserting legal conclusions, and lacking foundation.  Finally, Exxon argued that a chart that Porter created purporting to explain Exxon's promotion guidelines should be stricken because it is unauthenticated, without foundation, and hearsay.

Porter has not responded to the motion to strike, but she has filed new declarations for herself and Fondel.  (Docket Entries Nos. 75, 76).  Those declarations now state that they are true and correct, under penalty of perjury.  The motion to strike on the basis of the failure to include this statement earlier is denied as moot.

Exxon's remaining arguments are addressed below.

**A.    Objections to Fondel's Declaration**

Fondel's declaration describes her experience as an employee at Exxon.  She asserts that Exxon discriminated against her on the basis of race throughout her 24 years of employment.  Other than the fact that she is, like Porter, an African-American woman who worked at Exxon, Fondel's declaration sheds little light on Porter's claims.  There is no indication from her declaration that she

knew Porter, worked with Porter or in the same department, shared supervisors, held the same position, or witnessed Exxon's alleged discriminatory actions against Porter.   Porter has not explained why Fondel's experience is relevant to Porter's claims.   Fondel's declaration is irrelevant to Porter's claims, and the objection to it is sustained.

Fondel's more recently filed declaration added statements expanding the basis for her contention that Exxon discriminated against her during her own employment.   Exxon objected to these additional statements.   Porter has not explained why these statements, adding facts that appear to have been known when the original declaration was filed, were not included then.   Nor has she explained why the declaration was not amended sooner to include these additional facts, so that Exxon could have responded to them properly.   Exxon objected to the original Fondel declaration eight days after it was filed.   Porter did not file the amended Fondel declaration until the day before the hearing on the motion for summary judgment, over two months later, after the parties had exchanged briefs.   Neither Exxon nor the court had time to review it so that it could be discussed at that hearing.   Paragraphs 2 to 9 are also disregarded on that basis.

### B.    Specific Objections to Porter's Declaration

Exxon also moved to strike parts of Porter's declaration, but on different grounds.   The last sentence  of paragraph 3 states that Porter has personal knowledge of the impact an employee's CL has on her compensation.   This statement contradicts Porter's prior deposition testimony that she did not know how an employee's CL was connected to compensation.   (Docket Entry No. 31, Porter Depo. at 52-53, 55, 120, 189, 233).   A court considering a summary judgment motion may disregard a nonmovant's affidavit that contradicts, without explanation, her previous deposition testimony. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002); *S.W.S. Erectors,*

*Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n. 23 (5th Cir. 1992). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-72 (7th Cir. 1995). Courts must be careful to distinguish between "discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 1169-70. Porter's deposition is inconsistent with her later declaration, and she has failed to explain the inconsistency. The objection to this statement is granted.

Exxon made a similar argument about paragraph 8 of Porter's declaration, in which she identifies the timetable for a CL promotion based on an employee's ranking. Porter testified in her deposition that she did not have personal knowledge about, or experience in, how CL promotions worked. (*Id.* at 119-120, 234). She did know that promotions are controlled by the Advancement Guide, and Porter attached the Advancement Guide to her response. (*Id.* at 233; Docket Entry No. 67). The Advancement Guide conflicts in part with Porter's declaration. Under the Advancement Guide, CL promotion eligibility is a function of a person's position, performance rank, current CL, and the number of years since a person's last CL promotion. Porter's declaration, however, described CL promotion eligibility as a function only of an employee's ranking and number of years since the last CL promotion. Because Porter testified that the Advancement Guide controls, she cannot rely on a declaration statement contradicting that testimony, without explanation. The objection to paragraph 8 is sustained to that extent. The objections to paragraph 11, sentence 1;

paragraph 14, sentence 2; and paragraph 15, sentence 3, are also sustained in part, for similar reasons and to the same extent.

The last sentence of paragraph 6, paragraph 10, sentence 5; and paragraph 15, sentence 3, all contain hearsay statements. Porter has not explained how the statements are excluded from the hearsay rule or fall under an exception to the rule. The objections to these portions of Porter's declaration are sustained.

Exxon objected that various statements in Porter's declaration speculate as to the motivations of others. In paragraph 5, sentence 3, Porter stated that Cole "would often make a distinction between myself and similarly situated White employees." Although very general, the statement does not appear to speculate about Cole's motivations, but instead makes an observation about how Porter perceived Cole's treatment of employees. This objection is overruled.

In paragraph 7, sentence 1, Porter stated that after she complained to the Human Resources Department about Cole's discrimination, Cole dropped her to a C ranking. The statement as to timing may support an inference of a retaliatory motive, but the statement itself is factual. The objection to this statement is overruled.

In paragraph 10, sentences 6 and 7, Porter described her impression of Ledesma's familiarity with her previous complaints. Her impression was based on a statement Ledesma made to her that is hearsay, and on her speculation about what Ledesma knew. The objection to this statement is sustained.

In paragraph 13, sentence 2, Porter described a modest raise she received in 2010 and stated that her CL "rank had a direct correlation to Exxon Mobil's failure to give me proper raises." This statement does not describe the motivations of others. Exxon submitted declarations with similar

statements. (Docket Entry No. 31, Sink Decl. at ¶ 8) (explaining that an employee's rank is a factor in his or her compensation). This objection is overruled, recognizing Porter's testimony that she lacked personal knowledge of precisely how CL affects raises.

### C.    Objections to Porter's Chart

Porter submitted a chart she created that appears to reflect her understanding, described in her declaration, of how CL promotions and performance rankings affect raises. Exhibit 7 was not authenticated or sworn to. It also contradicted Porter's prior deposition testimony that she lacked personal knowledge about the specific interplay between CL promotions and rankings and raise amounts, and that the Advancement Guide controls eligibility for CL promotions. The objection to this chart is sustained.

## IV.    Analysis

Porter's discrimination claims arise from two categories of alleged adverse actions. The first is the raises she received in 2010, 2011, and 2012. The second is the CL promotions she claims she was denied in 2010 and 2011. Each is analyzed below.

### A.    The Claim of Discrimination in Raises

Porter alleged that Exxon awarded her discriminatorily low raises, based on her race, violating § 1981. Porter pointed to her raises in 2010 (.5%), 2011 (4.4%), and 2012 (10.4%), claiming that each year, the amounts were lower than raises awarded to similarly situated white employees.

Exxon argued that Porter has not identified similarly white employees who received higher raises in 2010 and 2011, and has not identified any employee who received a higher raise in 2012. Exxon also argued that it proffered a legitimate nondiscriminatory reason for the amounts and timing

12

of Porter's  raises, and that Porter has not identified or submitted competent evidence raising a fact

issue as to whether Exxon's proffered reasons were a pretext for race discrimination or whether

discrimination was a motivating factor.

### 1.     The Legal Standard

Section 1981 claims are analyzed under the same framework as Title VII claims.

*Walker v. Geithner*, 400 Fed. App'x. 914, 915–16 (5th Cir.2010) (per curiam) (unpublished)

(summary calendar) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir.

2004)); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (citing *Pegram v. Honeywell,*

*Inc.*, 361 F.3d 272, 281 n. 7 (5th Cir. 2004)).   When a plaintiff presents proof of alleged

discrimination through indirect or circumstantial evidence, the claim is considered under the

burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box,*

*Inc.*, 376 F.3d 305 (5th Cir. 2004).   Under the modified *McDonnell Douglas* approach, the

plaintiff has the initial burden of making a *prima facie* showing of race discrimination.

*Abarca v. Metropolitan Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid*, 376 F.3d

at 312.   "To make out a prima facie case of discrimination in compensation, a plaintiff must show

that he was a member of a protected class and that he was paid less than a non-member for work

requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510,

522 (5th Cir. 2008); *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant "to

articulate some legitimate, non-discriminatory reason" for the disparity in compensation.

*Young v. United Parcel Serv., Inc.*, __ U.S. __, 135 S. Ct. 1338, 1345 (2015); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  If a defendant makes this showing, the presumption of discrimination dissolves.  *Lee*, 574 F.3d at 259;  *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  The plaintiff must then offer or identify evidence creating a factual dispute as to whether "either (1) . . . the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) . . . the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted); *see also Cullwell*, 468 F.3d at 873.

### 2.    Comparators

To make a *prima facie* showing of discrimination in pay, including raises, a plaintiff must identify or submit summary judgment evidence raising a factual dispute as to whether she was "paid less than a nonmember for work requiring substantially the same responsibility."  *Williams v. Galveston Indep. Sch. Dist.*, 78 F. App'x 946, 949 (5th Cir. 2003) (quoting *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)); *see also Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981).  "If a plaintiff's job responsibilities are significantly different from the responsibilities of employees she cites as a point of comparison, then the plaintiff has not made out a prima facie case.  In considering whether two jobs require substantially the same responsibility, [courts] have looked to the jobs' duties including the jobs' relative supervisory authority and responsibility for revenue."  *Williams v. Galveston Indep. Sch. Dist.*, 78 F. App'x 946, 949 (5th Cir. 2003) (citations omitted).  The comparators must be "nearly identical."  *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008).

Porter did not point to specific employees as comparators in her response or surreplies. She testified in her deposition that in 2010, employees identified as numbers 2, 3, and 9 received higher raises than she did; in 2011, employees 2, 3, 9, and 10 received higher raises; and that in 2012, employees 1-10 received higher raises. All but employee 8 are white. (Docket Entry No. 31, Porter Depo. at 243, 246, 249).

### a.   2010

Although employees 2, 3, and 9 received larger raises than Porter in 2010, she has not identified or presented evidence that they were similarly situated to her. The summary judgment evidence shows that they were not.

Employees 2, 3, and 9 held different positions than Porter. Porter's position in 2010 was Upstream Technical Assistant. (Docket Entry No. 69, Marlbrough Decl. at ¶ 3; Docket Entry No. 67; Docket Entry No. 1, Ex. 1 at 2, 4). Employee 2 and 3 were Assistant Office Staff Support for Project Support Services. (Docket Entry No. 32, Sink Decl. at ¶¶ 22, 23). Employee 9 was an Analyst in the Management, Professional, and Technical group, not in Porter's Office, Clerical, and Administrative group. (*Id.* at ¶ 9). Porter has provided no evidence of the job duties of these employees.

Employees 2 and 3 had different CLs and rankings in 2010 than Porter. Porter was a CL 15 in 2010 with a C ranking. Employee 2 was a CL 17 with a B ranking. (*Id.* at ¶ 22). Employee 3 was a CL 17 with an A ranking. (*Id.* at ¶ 23). Employee 9 was a CL 23. (*Id.* at ¶ 29). No evidence has been presented on his ranking in 2010. (*Id.* at ¶ 29). While employees 2 and 3 were, like Porter, classified in the Office, Clerical, and Administrative group, the evidence shows this to be a broad category that included a variety of different positions, tasks, experience and seniority, and skills.

This is insufficient to show that all employees, or these employees, within this broad classification were similarly situated. And Porter pointed to no other basis, such as job duties or responsibilities, to show similarity. She has not identified evidence supporting the inference that employees 2, 3, and 9 were similarly situated to herself when the 2010 raises were decided.

### b.      2011

The evidence showed that employees 2, 3, 9, and 10 received lower raises than Porter in 2011. (Docket Entry No. 31, Sink Decl. at ¶¶ 13, 22, 23, 29, 30). Like employees 2, 3, and 9, employee 10 had a different position than Porter. Employee 10 was a Staff Administrative Assistant for the Angola/Equatorial Guinea Unit. (*Id.* at ¶ 30). Employee 10 was, like Porter, at a CL 15 in 2011. (*Id.* at ¶ 30). Only employee 2 had the same performance ranking as Porter in 2011. (*Id.* at ¶¶ 22, 23, 29, 30). Porter has not pointed to evidence supporting an inference that these employees were similarly situated so as to make them comparators.

### c.      2012

Employees 1 through 10 all received lower raises than Porter in 2012. (Docket Entry No. 31, Sink Decl. at ¶¶ 13, 21-30). And Porter has not pointed to evidence supporting an inference that these employees were similarly situated so as to make them comparators.

### 3.      Exxon's Legitimate Nondiscriminatory Reasons

Assuming that Porter has made a *prima facie* showing of discrimination, Exxon has proffered nondiscriminatory reasons for the amounts and timing of Porter's raises in 2010, 2011, and 2012. Exxon pointed to the facts that Porter had different rankings, job performance, and experience than the employees she identified as comparators. Exxon also pointed to the record evidence of Porter's performance problems, including her trouble communicating effectively with other employees, and

to evidence showing that she did not improve after her supervisors gave her poor evaluations and counseled change.  (Docket Entry No. 31, Ledesma Depo. at 92:25-94:25).  These are legitimate, nondiscriminatory reasons for Exxon's challenged decisions.  The summary judgment burden shifted to Porter to raise a factual dispute material to determining whether the reasons were a  pretext for racial discrimination or whether discrimination was a motivating factor in the compensation decisions.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 532 (1993).  Porter may meet this burden by evidence supporting an inference that Exxon's reasons are "unworthy of credence."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 533 (1993).  She may also show that while other factors played a role, discrimination was a motivating factor.  *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).

### 4.        Pretext and Motivating Factor

Porter has not identified or submitted competent summary judgment evidence supporting an inference of pretext.  She did not dispute that she sent the emails that were a primary basis of the negative evaluations she received.  She argued that an employee's email habits are not a sufficiently serious reason to deny or reduce raises, but this argument mischaracterized the scope and significance of Porter's communication problem, as set out in the record.  Exxon presented undisputed evidence that Porter's emails were indeed a significant problem for her relationships with other employees.  Her supervisors, Smallstig and Ledesma, criticized her for sending frequent long emails to coworkers when brief and less adversary conversation would have been far more efficient and effective, and less disruptive and irritating.  (Docket Entry No. 31, Ledesma Depo. at 92:25-94:25; Docket Entry No. 33, Smallstig Decl. at ¶ 9).  When told about this problem, Porter did not improve.  (*Id.*).  Smallstig also noted that Porter would usually close her office door instead

of following the common practice at Exxon of leaving the door open, to facilitate communication. (Docket Entry No. 31, Smallstig Decl. at ¶ 10).  And even when Porter's door was open, she would not turn around to face coworkers who came into her office to speak with her.  Instead, Porter talked to them facing the opposite wall, looking into a mirror.  (*Id.*).

It is a truism that in office jobs such as Porter's, an employee's communication skills are an important part of  overall performance.  Porter's communication problems affected her ranking, which affected her raises.  Porter neither presented nor pointed to evidence suggesting that her supervisors' repeatedly expressed concerns about her communication problems were a pretext for discrimination or that discrimination was a motivating factor in the raises she received.

Porter alleged that the ranking system in general was a pretext for discrimination, but she does not explain how it is pretextual or provide competent evidence in support.  The structured and specific nature of the system, and of the criticisms she received, are inconsistent with her argument.  And the individuals Porter identifies as comparators are not similarly situated to her, which also cuts against finding pretext.

*Runnels v. Texas Children's Hosp. Select Plan*, 167 F. App'x 377, 385 (5th Cir. 2006), is instructive.  In that case, the employer presented evidence that its compensation system was based on a variety of factors, including production numbers, starting pay, job classification, and performance evaluations.  The employees provided evidence that their production numbers were similar to their comparator's, but provided no evidence that "they [were] similarly situated as to all the factors with a non-minority employee who is more highly compensated."  *Id.*  The court held that the employees had not raised a factual dispute material to determining whether the employer's proffered reasons for the compensation decisions were a pretext for discrimination.  *Id.*

18

The present facts are similar.  Exxon's compensation system is based on numerous criteria. The comparators are not similarly situated to Porter with respect to the criteria for performance ranking or compensation.  Porter has not raised a factual dispute material to determining whether Exxon's stated reasons for deciding her 2010, 2011, or 2012 raises were a pretext for racial discrimination or a motivating factor in those decisions.  Exxon is entitled to summary judgment dismissing that claim.

**B.      The Claim of Discriminatory CL Promotions**

Porter alleged that Exxon's failures to grant her requests for CL promotions in 2010 and 2011 were discriminatory.  Exxon argued that Porter failed to make a *prima facie* showing because, under objective criteria, she was not eligible for a CL promotion in 2010 and 2011; a failure to grant a CL promotion is not an adverse action; if it is an adverse employment action, the claim for a delayed or denied promotion in 2010 or 2011 is time-barred; and Porter did not identify similarly situated  employees outside the protected class who received CL promotions when she did not. Exxon alternatively argued that assuming a *prima facie* showing, Porter's ineligibility for the CL promotions when she sought them was a legitimate nondiscriminatory reason for delaying the promotions, and Porter did not raise a factual dispute material to deciding whether Exxon's reasons were a pretext for race-based discrimination or a race-based motivating factor.

Each argument, and Porter's responses, are considered below.

**1.      Eligibility for a CL Promotion**

Porter must make a *prima facie* showing that she was qualified for the CL promotions she sought.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003).  Exxon argued that Porter was not qualified to receive a

19

CL promotion in 2010 and early 2011 because an insufficient number of years had passed since her last CL promotion.

The Advancement Guide states the number of years an employee must have spent in a particular CL to be eligible for promotion to the next CL. (Docket Entry No. 67). A certain number of years in each CL is a necessary but not sufficient basis for promotion to the next CL. (Docket Entry No. 32, Sink Decl. at ¶ 7; Docket Entry No. 69, Cowthran Depo. at 39:25-40:6). The higher an employee's ranking, the less time that employee must spend in a given CL to be eligible for CL promotion. (Docket Entry No. 67). Promotion decisions for a particular year are made in September or October, but do not become effective until the following year. (Docket Entry No. 32, Sink Decl. at ¶ 9).

The record shows that Exxon promoted Porter consistent with the practices and criteria set out in the written Advancement Guide. In May 2010, the decision was made to increase Porter's ranking for 2011 to a B. (Docket Entry No. 32, Sink Decl. at ¶ 12). She testified in her deposition that she was promoted to a CL 15 in 2005, but a few minutes later testified that the promotion occurred in 2007. (Docket Entry No. 31, Porter Depo. at 50:25-51:20; 52:3-10). The difference is not material because Porter was not eligible for promotion to a CL 16 until four years after 2007. A CL 15 employee must have a B ranking and four years in CL 15 to be eligible for promotion to CL 16. (Docket Entry No. 67). Porter could not have been promoted within that four years unless she received at least a B ranking, which she did not have until 2011. The change from C to B ranking occurred in her 2010 evaluation and did not become effective until 2011. It was not until 2011 that she was eligible for a CL promotion, which would take effect in 2012. That is what the

20

record shows occurred.  In October 2011, Exxon conducted its annual evaluation of CL promotions, to be effective in 2012, Porter was approved for promotion, and it became effective in 2012.

Porter's declaration stated that she requested a CL promotion in 2011, but she did not specify when in 2011 that occurred.  (Docket Entry No. 75, Porter Decl. at ¶ 14).  Although she claimed that she sought and should have received a CL promotion earlier than the fall of 2011, she has not presented or pointed to evidence that employees generally receive promotion decisions outside the usual timetable.  The  summary judgment evidence shows that promotion decisions for a particular year are decided in September or October of each year, to become effective the following year.

Porter argued in the alternative that Exxon makes exceptions to the Advancement Guide requirements for CL promotion and should have made an exception for her.  Exxon has presented evidence that it does not make exceptions to the eligibility requirements for CL promotions set out in the Advancement Guide for Office, Clerical and Administrative employees.  (Docket Entry No. 32, Sink Decl. at ¶ 14; Docket Entry No. 31, Smalstig Decl. at ¶ 6).

Porter disputed that exceptions cannot be made for employees in this broad category.  She pointed to the deposition of James Cowthran, an Exxon supervisor, who testified as follows:

> There is a number of ways you get from 14 to 15.  The first one is that the person's salary may have been constrained by the 14 level and the supervisor can make the recommendation to promote to 15 if the individual is qualified and meets the minimum standards.  Also you could get a potential recommendation from HR for that person to be promoted from 14 to 15.

(Docket Entry No. 69, Cowthran Depo. at 40:14-21).  Contrary to Porter's argument, Cowthran's testimony made clear that although there are different ways to be promoted to a higher CL level, each employee must still "meet[] the minimum standards."  (*Id.*).

Porter pointed to Exxon employees she alleged received CL promotions without serving the number of years in the prior level stated in the Advancement Guide.  She pointed  to employee 4, who was ranked A when promoted from CL 18 to CL 23, (Docket Entry No. 32, Sink Decl. at ¶ 24); employee 7, who was classified as a CL 18 and then in two years was promoted to CL 22; (*id. at* 27); and to employee 8, who was a CL 16 in 2011 and promoted to CL 21 in 2012, (*id.* at ¶ 28).  The undisputed evidence shows that these changes in CLs were not exceptions to the Advancement Guide eligibility requirements for CL promotions for their existing jobs.  These employees did not receive CL promotions, but instead received new jobs.  (*Id*. at ¶ 10, 24, 27, 28).

Porter failed to make a *prima facie* showing that she was eligible for the CL promotion she sought before she received it.

### 2.     Whether Denying or Delaying a CL Promotion is an Adverse Employment Action or Barred by Limitations

Exxon argued that although it internally labels advancing from one CL level to a higher level as a promotion, it is not a promotion for the purpose of adverse-employment-action status.  Exxon argued that a CL promotion does not typically involve a change in job duties and does not necessarily mean higher compensation.  Alternatively, Exxon argued that if a CL promotion is a promotion for purposes of Title VII and § 1981, limitations bars Porter's claims.

28 U.S.C. § 1658 created a  four-year statute of limitations for federal causes of action. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 379 (2004).  Before § 1658,  courts would borrow the state-law limitations period.  *Id.*  In *Jones*, the court held that the § 1658 limitations period applied prospectively to claims arising under the 1991 amendment to § 1981 and Title VII. *Id.* at 383.  Section 1658 and its four-year limitations period applied to any claim that was not viable before those amendments.  *Id.*  If a claim was viable before the 1991 amendments, then § 1658 did

not apply, and the state-law limitations period governed. *Id.* The promotion at issue in this case was outside the two-year state-law limitations period, but inside the four-year limitations period under § 1658.

Before the 1991 amendment, a promotion-denial claim was cognizable only if the promotion "r[ose] to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989); *Hill v. Cleco Corp.*, 541 F. App'x 343, 345 (5th Cir. 2013). "In other words, a failure-to-promote claim was actionable before the 1991 amendment if it equated to contract formation." *Cross v. The Home Depot*, 390 F.3d 1283, 1289 (10th Cir. 2004). After the 1991 amendment, a plaintiff had to show an "objective difference in the employment benefits garnered from the [new] assignment." *Griffin v. Sea Mar Mgmt., Inc.*, 243 F. App'x 852, 854 (5th Cir. 2007).

Porter has shown that the CL promotion she received in October 2011 was not a new and different relationship with Exxon. The undisputed evidence showed that a CL promotion can result in a difference in compensation, but usually does not itself significantly change job duties or other aspects of the employment relationship. (Docket Entry No. 32, Sink Decl. at ¶¶ 7, 8). It is a change, but it is not so significant as to be "equated to contract formation," *Cross v. The Home Depot*, 390 F.3d 1283, 1289 (10th Cir. 2004); *see also Griffin v. Sea Mar Mgmt., Inc.*, 243 F. App'x 852, 854 (5th Cir. 2007). The cases finding viable pre-1991 claims generally involve changes in duties more significant than Porter's CL promotion from a 15 to a 16 involved. *See, e.g., Hill v. Cleco Corp.*, 541 F. App'x 343, 345 (5th Cir. 2013) (promotion denial claim was viable before the 1991 amendment because the new position guaranteed a higher salary and involved new duties and new supervisory powers); *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 699 (5th Cir. 2008) (promotion

denial was a viable pre-1991 amendment claim because the new position provided new supervisory powers).

Porter has made a *prima facie* showing that her claim for the 2011 denial of a CL promotion would not have been viable before the 1991 amendment. The four-year limitations period applies and her claim is not time barred.

### 3. Whether Porter Has Identified Comparators

A promotion-denial case typically involves an employee in a protected class applying for a higher position within the company that is instead given to an employee outside the protected class. *See, e.g., Runnels v. Texas Children's Hosp. Select Plan*, 167 F. App'x 377, 382 (5th Cir. 2006) (Caucasian applicant promoted over two minority applicants). In addition to proving that he or she was qualified for the promotion, a plaintiff typically also shows either that "the position remained open and the employer continued to seek applicants, or the position was given to someone outside the protected class." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

A CL promotion falls somewhere between a promotion claim and a compensation claim for analytical purposes. Both parties referred to a CL promotion as a "promotion" and the evidence shows that it affects compensation. But unlike many promotion claims, a denial of or delay in a CL promotion does not appear to involve a failure to promote a protected applicant in favor of one outside the protected class to a position that only one can or a few can obtain. The analysis here is not whether the CL 15 position Porter sought remained open or was given to someone outside her protected class, but whether similarly situated employees outside the class received CL promotions when she did not. The test is more like that applied to a discriminatory-compensation claim, in which the focus is on whether the employees affected are similarly situated in relevant ways.

24

Although Porter initially pointed to numerous potential comparators, only employees 4 and 7 sought and received CL promotions in the years in question. (Docket Entry No. 32, Sink Decl. ¶¶ at 21-35). Porter has not identified or submitted summary judgment evidence showing that employees 4 and 7 were similarly situated to her. Exxon, on the other hand, provided evidence that employee 7 had a different position, rank, and CL. (*Id.* at ¶ 27). Employee 7 was unranked in 2010 and had a CL of 18.[2] She held the position of Technical Support Assistant in Safety, Risk, and Operations when she was promoted to the position of Analyst within the Management, Professional, and Technical group and given a CL of 23. Employee 4 held the position of Assistant Office Staff Support for the Interchange Coordination Unit and was a CL 18. (*Id.* at ¶ 24). Employee 4 and Porter were apparently ranked in the same group, (*id.*), but there is no evidence that being in the same ranking group or having the same ranking letter means that those employees have substantially similar duties, responsibilities, supervisors, or experience. Porter has not pointed to evidence showing the job duties of these employees.

Exxon also argued that employees 4 and 7 are not similarly situated in part because they have different supervisors than Porter. Porter argued that they have a common supervisor for the purpose of rankings, because some stages of Exxon's ranking process involve collaboration among the supervisors. The record shows that the collaboration is limited. A supervisor who does not know an employee working for another supervisor does not participate in, or provide input about, that employee's performance ranking. Instead, the supervisor signs off on the direct supervisors' recommendation for their employees. The evidence showed that Porter's supervisors, Ledesma and Smallstig, did not directly supervise or otherwise know employees 4 and 7. There is no basis to find

---

[2] Exxon did not state what ranking she received in 2011. (Docket Entry No. 32 ¶ 27)

that this limited collaboration supports a common-supervisor finding. And this argument ignores the fact that the collaborative process involves performance-ranking decisions, not CL-promotion decisions, which are governed by the Advancement Guide and by the recommendations of Global Compensation. Porter has not shown that there were comparators who were more favorably treated for CL promotions.

### 4.    Nondiscriminatory Justification, Pretext, and Motivating Factor

Assuming that Porter has made a *prima facie* showing, Exxon has articulated legitimate nondiscriminatory reasons for the timing of its CL promotion decision. Exxon asserted that it followed the Advancement Guide and Global Comensation's recommendation. For the reasons described in this opinion, Porter has failed to raise a factual dispute material to determining that the proffered reasons do not support an inference of pretext and that discrimination was not a motivating factor. Exxon is entitled to summary judgment dismissing Porter's CL promotion claim.

### C.    The Retaliation Claim

### 1.    The Legal Standard

When, as here, a plaintiff seeks to prove retaliation through circumstantial evidence, she has the initial burden to make a *prima facie* showing that: (1) she was engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for the employment action. *Id.* If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* "Title VII retaliation claims

26

must be proved according to traditional principles of but-for causation . . . .  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __U.S. __, 133 S.Ct. 2517, 2533 (2013); *see also Wright v. St. Vincent Health Sys.*, 730 F.3d 732 (8th Cir. 2013) (applying a but for causation standard to a § 1981 retaliation claim).

### 2.    Analysis

Exxon did not dispute that Porter engaged in protected activities.  While she was working under Cole's supervision, Porter complained in 2005 to the Human Resources Department about racial discrimination, and she filed an EEOC charge of discrimination on December 4, 2007. (Docket Entry No. 66, Cowthran Depo. at 44:13-19; Docket Entry No. 31, Porter Depo. at 23:2-23). In April and June 2011, Porter complained of discrimination and retaliation by Ledesma.  (Docket Entry No. 75, Porter Decl. at ¶ 15). Exxon disputed that the allegedly retaliatory actions were materially adverse and challenges whether these protected activities were the but-for cause of the alleged retaliation.

Porter must make a *prima facie* showing that a reasonable employee would have found the raise amounts she received and the denial or delay of the CL promotions materially adverse. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."'  *Id.* at 68 (quotations omitted).  The court is to examine the context and circumstances of the acts.  *Id.*

The raise amounts in 2010 and 2011 were materially adverse under this test.  Although the difference in the raises Porter received and those she alleges others received was only a few

percentage points each year, this is a difference that appears to amount to several hundred dollars.[3] The 2012 raise was not materially adverse because the undisputed evidence shows that it was substantial and more than the amounts awarded to the other employees Porter identified as comparators.

The denial of CL promotions, in general, could be materially adverse because CL is a factor in determining an employee's compensation. The denial of the CL promotion in 2010 for the 2011 year could be materially adverse to the extent the CL was a factor in the compensation decisions made that year. The alleged initial denial in the 2011 CL promotion could be materially adverse if it delayed the effective promotion date and if that in turn delayed the effective date for a larger raise. But Porter was approved for a promotion in October of 2011, which became effective in time for it to be a factor in determining her October 2012 raise. If the promotion could have been both made and implemented earlier, and was not, and if that delay also delayed her raise, that could be a materially adverse effect. The evidence does not support that scenario.

### 3.    But-For Cause

Assuming a materially adverse effect, the next issue is whether there is a basis for but-for causation. The first set of allegedly retaliatory acts are the 2010 CL promotion denial and relatively low raises. The causal connection between these acts and the protected activities in question is weak. These acts occurred approximately three years after the protected activity in question. *See Bell v. Bank of America*, 171 Fed. App'x. 442, 444 (5th Cir. 2006) (seven-month lapse alone was

---

[3] Evidence has not been presented on the dollar value of the raises of the comparators or the salaries of the comparators. Porter presents evidence that her raise of .5% in 2010 constituted a raise of $250.00. A raise 1 or 2 percentage points higher for the comparators than for Porter can therefore reasonably be assumed to constitute a raise of several hundred dollars more than Porter.

insufficient to show the causal link); *Myers v. Crestone Intern., LLC*, 121 Fed.Appx. 25, 28 (5th Cir. 2005) (three-month lapse alone insufficient); *Harvey v. Stringer*, 113 Fed.Appx. 629, 631 (5th Cir. 2004) (ten-month lapse alone insufficient); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (five-month lapse alone insufficient). The challenged decisions were made, in part, by a supervisor–Ledesma–who was not the subject of Porter's 2007 complaints. The same year that Porter complained that she was retaliated against by Ledesma, she also received a ranking increase based on the recommendation of the alleged retaliator, Ledesma. This could accelerate the CL promotion schedule and increase compensation, both to Porter's benefit. Porter has failed to raise a factual dispute material to determining that the first group of protected activities was not a but-for cause of any of the first group of allegedly retaliatory acts.

Porter also complained about discrimination in April and June 2011. The second group of alleged retaliatory acts was the denial of a CL promotion in 2011 and subpar raises in 2011 and 2012. But Porter's protected activities in 2005 and 2007 are too remote in time to be a but-for cause of Ledesma's allegedly retaliatory 2011 acts. Uncontroverted record evidence shows that Exxon decided the amount of Porter's 2011 raise in 2010, before her protected activities of 2011. (Docket Entry No. 32, Sink Decl. at ¶ 9). Porter has failed to make a *prima facie* showing as to this claim.

The undisputed facts relating to the 2011 CL promotion also negate the necessary causal link to Porter's protected activity. Porter does not state when in 2011 she applied for the CL promotion or when it was allegedly denied. *See* (Docket Entry No. 66, Porter Decl. at ¶ 14). Undisputed evidence shows that Porter's supervisors worked in 2011 to obtain a CL promotion for her. In October 2011, Ledesma and two other supervisors, Kevin Smaltig and Ray Steinmetz, recommended that Porter receive a CL promotion. (Docket Entry No. 32, Sink Decl. at ¶¶ 14-15). The CL

promotion went through and, in accordance with the usual timing for the effective date of CL promotions, became effective in 2012.  (*Id.*).  In 2011, these supervisors also recommended that Porter receive a 2012 raise of 10.4%.  (*Id.*).  This raise also became effective on Exxon's regular schedule, in 2012.  This was the largest raise of any of the employees Porter has identified as comparators for her other claims.  The promotion and raise decisions were made within a few months after Porter's April and June 2011 complaints.  The undisputed evidence precludes a *prima facie* showing of causation.

### 4.    Nondiscriminatory Justification and Pretext

Assuming that Porter made a *prima facie* showing, Exxon proffered legitimate nondiscriminatory reasons for the CL promotion and raise decisions.  Porter has failed to raise a factual dispute material to deciding pretext.  The undisputed evidence showing the problems with Porter's performance,  that Porter's eligibility for the CL promotion was determined using the criteria set out in the Advancement Guide, and that the promotion became effective on  Exxon's usual schedule,  preclude an inference of pretext.  Exxon is entitled to summary judgment dismissing the retaliation claim.

## IV.    Conclusion

Exxon's motion for summary judgment is granted.  Final judgment is entered by separate order.

SIGNED on March 8, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

30